**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

FEDERAL TRADE COMMISSION,

   Plaintiff,

    v.

AMERICANA LIBERTY LLC, a limited liability company, also dba Stand Flag Poles, Stand, and www.standflagpoles.com;

THREE NATIONS CAPITAL LLC, a limited liability company, also dba Americana Flag Poles and www.americanaflagpoles.com;

MAXIMILIANO OJEDA, individually and as an officer of Americana Liberty LLC and Three Nations Capital LLC;

VIRGINIA HILFIGER, individually and as an officer and/or owner of Americana Liberty LLC and Three Nations Capital LLC; and

JULIAN GROVES, individually and as an officer and/or owner of Americana Liberty LLC and Three Nations Capital LLC.

   Defendants.

Case No. _____

**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

1. The FTC brings this action for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as well as 15 U.S.C. § 45a ("Section 45a"), the Made in the USA Labeling Rule ("MUSA Labeling Rule"), 16 C.F.R. Part 323, the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. § 70 *et seq.*, and the Rules and Regulations Under the Textile Fiber Products Identification Act, 16 C.F.R. Part 303 ("Textile Rules").  For these violations, the FTC seeks relief, including a permanent injunction, monetary relief, and other relief, pursuant to

Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b, MUSA Labeling Rule, 16 C.F.R. Part 323, Textile Act, 15 U.S.C. § 70 *et seq.*, and Textile Rules, 16 C.F.R. Part 303.

## SUMMARY OF THE CASE

2.      Defendants Americana Liberty LLC ("Americana Liberty") and Three Nations Capital LLC ("Three Nations"), under the leadership and direction of Maximiliano Ojeda, Virginia Hilfiger, and Julian Groves ("Individual Defendants") (collectively, "Defendants"), have falsely advertised and labeled their patriotic flag display products as "Made in the USA."

3.      Defendants advertise and sell patriotic flag display products—flagpole kits, flags, and related parts and accessories—to consumers through their websites, www.standflagpoles.com and, at least as of March 11, 2026, www.americanaflagpoles.com.  Defendants have repeatedly and prominently represented in advertising and labeling that these patriotic flag display products are "Made in the USA," "All-American Made," "100% Made in the USA," "100% American Made Tough," and "Built by Americans for Americans" despite the fact that these products are wholly imported from China and/or are comprised of significant or essential foreign components from China.  Defendants have made these unqualified "Made in the USA" claims through their websites, digital marketing (*e.g.*, search engine optimization, ad words), and other marketing materials (*e.g.*, social media and email advertisements).

4.      However, Defendants' flagpole kits, flags, and related products and accessories sold to consumers do not actually meet the "Made in the USA" requirements under the FTC Act and MUSA Labeling Rule.

5.      In addition, Defendants have repeatedly violated both the Textile Act and Textile Rules in connection with the advertising and sale of certain textile flag products.  The Textile Rules require that product descriptions for textile products advertised in promotional materials, including websites and social media, clearly and conspicuously state whether the product was made in the

2

United States, imported, or both.   15 U.S.C. § 70b(i), 16 C.F.R. § 303.34.   Defendants' advertisements, however, either falsely claim their flags are "Made in the USA" or fail to disclose country-of-origin for these products.

6.     Defendants have also failed to include mandatory disclosures on labeling for their textile flag products.  The Textile Act and Textile Rules require that textile fiber products have a label disclosing their fiber content, country-of-origin, and identity of the manufacturer or another business responsible for marketing or handling the item.  *See* 15 U.S.C. § 70b; 16 C.F.R. § 303.16. Defendants, however, do not provide labels on their flag products with this required information.

7.     Consumers are harmed by Defendants' false or misleading "Made in the USA" advertisements, labels, and claims, as well as Defendants' failure to make country-of-origin and other required disclosures on the labeling of certain textile flag products.  Not only have consumers received patriotic flag display products that are imported in whole, or in significant part, from China, but consumers have been deprived of truthful information about the true nature and origin of these products.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

9.     Venue is proper in this District under 28 U.S.C. §§ 1391 (b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

10.     The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

11.     The FTC also enforces Section 45a, which states: "[t]o the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of [Title 15]."  The decisions and orders of the FTC provide, in part, that a representation that a product is made in the United States will not be a violation so long as all, or virtually all, of the component parts of the product are made in the United States and all, or virtually all, of the labor in manufacturing the product is performed in the United States.

12.     The FTC also enforces the MUSA Labeling Rule, 16 C.F.R. Part 323, which prohibits labeling any product with an unqualified "Made in USA" or similar country-of-origin claim unless the final assembly or processing of the products occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.  16 C.F.R. § 323.2.  This prohibition on false or misleading "Made in the USA" labeling also extends to claims on a "seal, mark, tag, or stamp" used in print or electronic ads.  16 C.F.R. §§ 323.1, 323.3.

13.     The FTC also enforces the Textile Act, 15 U.S.C. § 70 *et seq*., and Textile Rules, 16 C.F.R. Part 303, which govern the labeling and advertising of certain textile fiber products manufactured, sold, and advertised in commerce.  The Textile Act and Textile Rules require, among other things, country-of-origin disclosures in labeling and advertising of covered textile fiber products and make it unlawful to misbrand or falsely or deceptively label or advertise their country-of-origin.  15 U.S.C. §§ 70a, 70b, 16 C.F.R. §§ 303.16, 303.33, 303.34.  The Textile Act and Textile Rules also require covered textile fiber products to include labels disclosing fiber content, country-of-origin, and identity of the manufacturer or another business responsible for

marketing or handling the product.  It is unlawful to exclude labeling from the product.  15 U.S.C. § 70b, 16 C.F.R. §§ 303.16, 303.33.

## DEFENDANTS

14.     Defendant Americana Liberty, also doing business as Stand Flag Poles, Stand, and www.standflagpoles.com, is a Delaware limited liability company with its principal place of business at 813 NE 17th Terrace Unit A, Fort Lauderdale, FL 33304.  Americana Liberty transacts or has transacted business in this District and throughout the United States.  At all times relevant to this Complaint, acting alone or in concert with others, Americana Liberty has advertised, marketed, distributed, or sold products, including flagpole kits, flags, and related accessories and parts, to consumers throughout the United States.

15.     Defendant Three Nations, also doing business as www.americanaflagpoles.com, is a Delaware limited liability company with its principal place of business at 813 NE 17th Terrace, Unit A, Fort Lauderdale FL 33304.  Three Nations transacts or has transacted business in this District and throughout the United States.  At times relevant to this Complaint, acting alone or in concert with others, Three Nations has advertised, marketed, distributed, or sold products, including flags, flagpole kits, and related accessories and parts, to consumers throughout the United States.

16.     Defendant Maximiliano Ojeda ("Ojeda") is the Chief Executive Officer, founder, owner, and managing member of Americana Liberty and manager and member of Three Nations. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Americana Liberty and Three Nations, including the acts or practices described in this Complaint. For example, Defendant Ojeda oversees country-of-origin labeling for products advertised, offered for sale, and sold by Defendant Americana Liberty.  Defendant Ojeda resides in this District and,

in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

17.     Defendant Virginia Hilfiger ("Hilfiger") is the Chief Branding Manager, owner, and managing member of Americana Liberty and a member of Three Nations.  At all times relevant to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Americana Liberty and Three Nations, including the acts or practices described in this Complaint.  For example, Defendant Hilfiger oversees branding (*e.g.*, "Made in the USA" claims) for products advertised, offered for sale, and sold by Defendant Americana Liberty.  Defendant Hilfiger resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

18.     Defendant Julian Groves ("Groves") is the Chief Operating Officer, owner, and managing member of Americana Liberty and a member of Three Nations.  At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Americana Liberty and Three Nations, including the acts or practices described in this Complaint.  For example, Defendant Groves oversees country-of-origin labeling for products advertised, offered for sale, and sold by Defendant Americana Liberty.  Defendant Groves resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

**COMMON ENTERPRISE**

19.     Americana Liberty and Three Nations (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  Corporate Defendants have conducted the business practices

6

described below through interrelated companies that commingle funds and have common ownership, officers, managers, business functions, employees, office locations, product inventory, and advertising, among other things.  Because these Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

20.    Defendants Ojeda, Hilfiger, and Groves (collectively, "Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.  The Individual Defendants each had knowledge of the unlawful acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

21.    At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

22.    Defendants sell a variety of patriotic flag display products focused on residential uses, including flagpole kits, flags, accessories, and add-ons.  They market and sell these products online through their websites www.standflagpoles.com and www.americanaflagpoles.com.

23.    Defendants use advertising and targeted digital marketing tactics, including specific keywords and phrases, to maximize and profit from "Made in the USA" search results and drive traffic to their websites.  Defendants also used Meta platform campaigns to promote the Americana flagpole kit by focusing on "Made in the USA" claims, including by using a seal placed on images of the flagpole kit.

**Defendants Concealed the Existence of Three Nations**

24.     The Commission's Civil Investigative Demand ("CID") to Defendant Americana Liberty required it, among other things, to "[d]escribe the Company's [i.e., Americana Liberty's] corporate structure and state the names of all parents, subsidiaries, affiliates, operations under assumed names, websites, and entities over which the Company exercises supervision or control."

25.     In its response to the CID, which included a certification of compliance signed by Americana Liberty's Operations Manager, Defendant Americana Liberty identified only Americana Liberty Holdings LLC in response to the CID specification regarding "parents, subsidiaries, affiliates, operations under assumed names, . . . and entities."  Moreover, Defendant Americana Liberty identified only one website, www.standflagpoles.com, that it owned.

26.     In January 2026, FTC staff discovered the existence of another entity affiliated with Defendant Americana Liberty—Three Nations.

27.     Defendants Ojeda, Hilfiger, and Groves formed Defendant Three Nations as a Delaware limited liability company on May 21, 2025.  Defendants Ojeda, Hilfiger, and Groves are each owners of Defendant Three Nations.  Defendant Ojeda is the manager of Defendant Three Nations.

28.     Defendant Three Nations' principal place of business is 813 NE 17th Terrace, Unit A, Fort Lauderdale FL 33304.  This address is also the principal place of business for Defendant Americana Liberty.

29.     Three Nations' corporate website, www.americanaflagpoles.com, is also owned, operated, and controlled by Defendants.

30.     Through at least March 11, 2026, Defendant Three Nations' website, www.americanaflagpoles.com, was operational and accessible to the public.

**Defendants Have Falsely Marketed, Labeled, and Sold
Their Patriotic Flag Display Products as "Made in the USA"**

31.     Since at least December 2024, Defendants have advertised their patriotic flag display products—*e.g.*, flagpole kits, flags, and related products and accessories—as "Made in the USA."

32.     Defendants market and sell these patriotic flag display products to consumers through their websites, www.standflagpoles.com and, at least as of March 11, 2026, www.americanaflagpoles.com.

33.     Defendants also advertise on Facebook, Instagram, YouTube, TikTok, X (formerly Twitter), and Pinterest.   These advertisements on social media include links to Defendants' websites, which allow, or allowed, consumers to purchase their products.

**Flagpole Kits**

34.     Defendants sell sectional flagpole kits and telescoping flagpoles kits called the Americana Flagpole Kit, the Roosevelt Flagpole Kit, and the Washington Flagpole Kit.

**The Americana Flagpole Kit**

35.     The Americana Flagpole Kit is a 24ft sectional flagpole kit with fixed segment poles.  The kit comes with six (6) 4ft sections, a halyard system (rope), a cleat, screws, a gold ball finial, a 4ft by 6ft American Flag, and a ground sleeve to securely hold the pole to the ground.

36.     Defendants sell the Americana Flagpole Kit through www.standflagpoles.com and, up until at least March 11, 2026,  www.americanaflagpoles.com.

37.     Defendants' website, www.americanaflagpoles.com was a model-specific site and sold only the Americana Flagpole Kit and American flags.  The website was launched on June 1, 2025.

38.     Both websites advertise, or advertised, the Americana Flagpole Kit with similar claims, focusing on American manufacture, materials, and patriotism.

9

39.     The www.americanaflagpoles.com website prominently referenced its relationship with its "sister company," described as "Stand Flagpoles" [sic] or as "Stand" in several instances and provides direct links to www.standflagpoles.com, which also markets and sells the Americana Flagpole Kit.

40.     A page on www.americanaflagpoles.com stated "Still Proud of Our Roots," "We built [the] Americana [Flagpole Kit] out of everything we learned from Stand [the dba of Americana Liberty]," and "Stand will continue to offer reliable flagpoles at a lower price point— but if you're ready for a next-level experience, we invite you to fly Americana."

41.     Another webpage explained that "Stand" decided to build the Americana Flagpole Kit because "as the demand grew for truly American-made products, we realized it was time to build something different" and "Today we're proud to introduce you to Americana Flag Poles. Our premium, American-made brand, built for those who want something more than a flagpole. They want something worthy of the flag it holds."

42.     Another webpage explained "We launched Americana [Flagpole Kit] after over a decade of experience serving homeowners through our sister company, Stand Flagpoles [sic]. Over the years, we saw a growing demand for products that are truly American-made—not just assembled or sourced, but built here, start to finish."

43.     Defendants started selling the Americana Flagpole Kit as part of a "US Made" Program they launched in March 2025.  Since at least March 2025, through online marketing, Defendants have advertised the Americana Flagpole Kit as wholly "Made in the USA," including labeling it with unqualified "Made in the USA" representations, including a "seal, tag, mark, or stamp" under the MUSA Labeling Rule.

44.     The following website and social media advertisements disseminated between March 2025 and February 2026 provide examples of Defendants' use of prominent stylized

circular "Made in the USA" and "American Made" seals alongside claims that the Americana

Flagpole Kit is, for example, "Built By Americans For Americans," "100% Made in USA," or

"Proudly Made in the USA."  Exhibits A-C.



Exhibit A (March 2025 Instagram Ad)



Exhibit B (Feb. 2026, www.standflagpole.com)



Exhibit C (Feb. 2026, www.americanaflagpoles.com)

45.     The Americana Flagpole Kit comes with several necessary parts for the consumer to manually assemble, including an American flag, hand-welded halyard, a cleat with rope system, a gold ball finial, a ground sleeve that securely holds the pole in the ground, and screws, all of which Defendants prominently advertise.



Exhibit D (Feb. 2026, www.americanaflagpoles.com)

13

46. Defendants also advertised that these components are "[M]ade in the USA" and "U.S.-made." The following website and social media advertisements disseminated between March 2025 and February 2026 provide examples of such claims for the parts that come with the Americana Flagpole Kit. Exhibits E-G.

What types of hardware are included with the flagpole? ⌃

Each Americana Flagpole comes complete with:

- A gold ball topper
- Heavy-duty rope and pulley system
- Aluminum cleat
- Reinforced top cap
- All necessary mounting hardware (¼" carriage bolts, lock washers, and nylon lock nuts)
- A 4×6 American flag
- A steel ground sleeve for secure installation

All components are made in the USA with American aluminum and steel.

Exhibit E (Feb. 2026, www.americanaflagpoles.com)

# Proudly Made. Unapologetically American.

Locally made using US sourced aluminum, our flagpoles are hand-welded, powder-coated, and built to withstand the test of time.

This is legacy-grade craftsmanship, worthy of front yards and proud future generations.

**Flagpole Kit Includes:**

- U.S.-Made Materials & Domestic Assembly
- 24FT Telescoping Pole in 6 Precision-Milled Sections
- UV & Weather-Resistant Powder-Coated Finish
- Hand-Welded Halyard & Cleat
- 4×6 American-Made Flag
- Solar Light, Gold Ball Finial, Ground Sleeve

**Buy Americana Flagpole Kit**

 **Better Parts, Better Support**
U.S.-made components mean faster help and fewer hassles.

Exhibit F (Feb. 2026, www.americanaflagpoles.com)



Exhibit G (Feb. 2026, www.americanaflagpoles.com)

47.     In numerous instances, including, but not limited to, the promotional materials referenced in paragraphs 44-46, Defendants have represented, expressly or by implication, that the Americana Flagpole Kit is all or virtually all made in the United States.

48.     In fact, all of the parts and accessories that are included in the Americana Flagpole Kit are wholly imported from China.

49.     In response to the FTC's CID seeking information about the foreign and domestic components and processing related to the Americana Flagpole Kit, Defendants admitted the following accessories and parts are manufactured in and imported from China:  an LED solar light; an aluminum gold ball; a 4ft x 6ft American Flag; a PVC Sleeve; 4 clips; a rope (14 m); a top cap; 2 screws; pins; a cleat; and 15 black nut caps.

50.     Flagpole kits are designed to be complete, ready to install systems, not just standalone poles.  These imported parts and accessories are essential for several reasons including, but not limited to:

a. Without imported LED solar lights, Americana Liberty flagpole kits would not be visible at night. Defendants explain, "The Flag Code requires proper lighting at night. Solar or wired systems ensure you stay compliant and respectful."

b. Without the aluminum gold ball finials, the flagpole kits would not have a top mechanism for flag movement.

c. Without the sleeve, the flagpole kit would not be anchored safely and permanently into the ground.

d. Without the rope (halyard) and cleats, the flag could not be raised and lowered.

e. Without the screws, bolts, brackets, and mounting hardware, the flagpole kits would lack structural stability, correct positioning, and support.

f. The flag is the functional and visual outcome of installation because a flagpole exists to display a flag.

51. Defendants also produced a September 24, 2025 email from its South Carolina flagpole manufacturer and supplier Honor LSV, LLC stating, "All aluminum is ordered from a mill in Florida. So the aluminum we make into your flagpoles is extruded from a mill in Florida. Where all the core minerals comes from to make the aluminum, I don't know. All hardware is foreign. No hardware is made in the US other than government projects. All other items come from you."

52. Defendants never provided information to the FTC about where the mill in Florida obtains the raw materials to make the aluminum used by Honor LSV to make the Americana flagpole.

53.     The foreign hardware used by Honor LSV to make the Americana Flagpole Kit's 24ft sectional flagpole includes 15 Carriage bolts; 15 ¼-inch nylon lock nuts; 15 ¼-inch split lock washers; and ¼-inch lock washers.

54.     The Americana Flagpole Kit contains more than a negligible or *de minimis* level of foreign content.  Defendants' express or implied representations that these flagpole kits are all or virtually all made in the United States are therefore false and misleading.

55.     In fact, the foreign parts and accessories are so essential to the flagpole kit that Defendants' own websites contain flagpole installation guides, FAQs, and videos explaining how to install the Americana Flagpole Kit using all the required parts and accessories.

56.     Defendants stated these components are essential, and their website explained why, providing explanations as to why "Quality Flagpole Accessories Matter."



December 12, 2025 · By Drew Whitmore

## Why Investing in Quality Flagpole Accessories Matters

A flagpole is only as strong and reliable as the accessories that support it.

While many homeowners focus on the pole and the flag itself, the smaller components play an equal role in keeping the display secure, smooth to operate, and visually appealing.

Quality accessories reduce wear, prevent damage, and help your flag fly proudly through every season.

Investing in premium cleats, ropes, lights, and hardware is not just an upgrade—it's long-term protection for your entire setup.

18

Exhibit H (Feb. 2026, www.americanaflagpoles.com)

57.     This webpage provided guidance on, for example, the role of durable cleats in daily use, why premium halyard rope makes a difference, why high-quality lights improve nighttime display, how reinforced hardware protects the entire setup, and how premium accessories increase longevity.

<u>The Roosevelt and Washington Telescoping Flagpole Kits</u>

58.     The Roosevelt Flagpole Kit ("Roosevelt") and Washington Flagpole Kit ("Washington") are telescoping flagpole kits that include extendable poles that are 20 feet or 25 feet and come with all necessary hardware for installation.

59.     Defendants have advertised the Roosevelt is made in the USA by claiming, "Using multiple American engineering firms, we completely remastered the [Roosevelt] Telescoping Flagpole."



Exhibit I (Feb. 2025, www.standflagpoles.com)

60.     Defendants have advertised the Roosevelt and Washington on social media as "Made in the USA with quality materials for long lasting durability" and "Built in America, built to last."

61.     In fact, the Roosevelt and Washington are wholly imported from China.  Indeed, all component manufacturing and assembly for these flagpole kits takes place in China.

62.     Since March 2025, consumers have complained directly to Defendants, as well as to the Better Business Bureau, that they purchased Defendants' products based on "Made in the USA" representations but received products from China.

<strong><u>Flags</u></strong>

63.     Defendants' flags include American flags, military flags, state flags, and specialty flags.  The flags come in multiple sizes including, for example, 3ft x 5ft, 4ft x 6ft, and 5ft x 8ft.

64.     Since at least December 2024, Americana Liberty has advertised certain flags as "Made in the USA."  Exhibits J, K, L, and M below provide examples.



Exhibit J (June 2025, www.standflagpoles.com)



Exhibit K (June 2025, www.standflagpoles.com)

21



Exhibit L (Feb. 2026, www.americanaflagpoles.com)

65.   From at least March 2025 to September 2025, Defendants advertised their Air Force, Army, Navy, and Coast Guard flags as "Made in the USA."  For example, in June 2025 they claimed their U.S. Army flag was "American Made" and used a "Made in USA" emblem stamped on the flag image promote it.



# Army US Military Flag (STAR)

~~$39.99 USD~~  $34.99 USD   Sale

Shipping calculated at checkout.

Add to cart

Buy with shop Pay

More payment options

Pay later with Klarna Learn more   Klarna

**Buy More, Save More!**

The American Made U.S. Army Flag proudly honors the strength, courage, and legacy of the United States Army. Crafted from durable, fade-resistant polyester, this 3ft x 5ft flag features sharp, vivid colors and double-stitched edges for long-lasting display. Designed for both indoor and outdoor use, it's perfect for homes, ceremonies, or any space that salutes our service members.

Exhibit M (June 2025, www.standflagpoles.com)

66.      In fact, Defendants had no substantiation for these claims.

67.      Defendants bought the flags from third-party sellers on Amazon without asking for any documentation regarding the products' country-of-origin or the location of the vendor.

68.      Shortly after Defendant Americana Liberty received a warning letter from FTC staff on July 7, 2025 ("Warning Letter"), outlining FTC staff's concerns about Americana Liberty's "Made in USA" representations, Defendants sent emails to Amazon third-party sellers, asking them for substantiation that the flags purchased by Defendants were "Made in the USA."

69.      On July 10 and 14, 2025, for example, Defendants emailed AXJBW, an Amazon third-party seller from which it bought Navy and Coast Guard flags, "request[ing] documentation or certification confirming that the items listed under your Amazon store . . . are genuinely made in the United States."  Defendants asked for "A manufacturer's certification," "A written statement

23

on company letterhead," or "any applicable third-party verification." They explained, "This information is essential for labeling accuracy on our end."

70. On July 16, 2025, Defendants emailed another Amazon third-party seller of American flags, Rosflagus, saying, "We are contacting you regarding the flags we purchase from your company . . . which have been advertised as Made in the USA. Our company [Defendant Americana Liberty] has received a Compliance Warning from the Federal Trade Commission (FTC) concerning these representations. As a result, we urgently require formal documentation from you confirming the origin of these products."

71. On July 16, 18, and 29, 2025, Defendants sent similar emails to HWlulu, an Amazon third-party seller which sold it Army flags. The July 29, 2025 email stated, "We are contacting you regarding the recent purchase of flags from your Amazon storefront, which were advertised as 'Made in the USA.' Upon inspection the products received are clearly labeled 'Made in China,' constituting a false and misleading origin claim. This is a serious violation of FTC guidelines on country-of-origin labeling and misleads consumers who rely on truthful representations for their purchasing decision."

72. Defendants sent similar emails to their other Amazon third-party sellers.

73. No Amazon third-party sellers responded to Defendants' emails or provided any substantiation for the origin of the products they sold to Defendants.

74. When asked about the country of origin of these flags, Defendants admitted in sworn interrogatory responses to the FTC: "Unknown. Flags were purchased through Amazon from third-party vendors, all of whom explicitly advertised the products as 'Made in USA' at the time of purchase. We relied on those representations during the period when we marketed and resold these items through our own channels. As of today, we do not have confirmation of the county of origin of these products from these former vendors."

24

75.     The storefront contact information on Amazon.com for these Amazon third-party sellers, as well as public trademark filings, show these third-party sellers are based in China.

**Additional Patriotic Products**

76.     From at least March to September 2025, Defendants advertised and sold other patriotic themed products, including wooden American flags called "Flags of Valor" and fire pits called "Liberty Fire Pit."

77.     Defendants advertised the Flags of Valor as "handmade in the USA by one of our combat veteran craftsmen . . . A truly veteran flag!"



The "Legacy Series" wooden American flag is the product we created at the start of our mission in 2015. These distressed wood American flags offer a deep look into our nation's history through their deep colors and antiquing. They endure a lengthy process from preparing the wooden canvas to adding the final color tones to enhance their timeless character. Each size is dedicated to a specific event or group of people, our humble way of remembering our heroes(read more below). Every flag is handmade in the USA by one of our combat veteran craftsmen...a truly veteran flag!

Exhibit N (June 2025, www.standflagpoles.com)

78.    Defendants advertised the Liberty Fire Pit as "Made in the USA."



Liberty Fire Pit with Standard Base (Made in USA)

$324.94 USD

Shipping calculated at checkout.

Size

24

Finish

Natural Steel

Base

Standard

Exhibit O (Aug. 2025, www.standflagpoles.com)

79.    Defendants did not have substantiation for these claims.

80.    In response to the FTC's questions about the domestic and foreign contents of these products, Defendants stated:

> Unknown.   All representations of [these] product[s] originate[] from vendor's Shopify Collective listing, a platform where third-party vendors create and control their own . . . origin statements, and marketing claims.

26

Through this program, vendors allow other sellers (in this case Americana Liberty) to offer their products on their respective e-commerce sites. Our Company does not draft, edit, verify, or approve any vendor-generated descriptions or origin statements for Shopify Collective products . . . . Accordingly, all information regarding the components, materials, country-of-origin, or importation of these products—including whether they contain foreign parts or materials—remains solely within the knowledge and responsibility of the vendor. Any 'Made in USA' or similar origin claims associated with these products are provided directly by the supplier, not by the Company. As a result . . . the Company does not have information regarding: a) whether the products contain foreign parts or materials; b) the countries of origin of any such parts or materials; or c) who imports those components or materials.

### Flag Country-of-Origin Disclosures

81. While Defendants advertise that certain flags are "Made in the USA," they do not provide country-of-origin disclosures for the other flags they advertise and sell online.

82. Defendants provided information about "key features" and "benefits" of these flags, including through FAQs, but have no disclosures about whether the flags are made in the USA or imported.

### Flag Textile Disclosures

83. On February 5, 2026, the FTC purchased five flags from Defendants.

84. The flags included American, Coast Guard, Air Force, Navy, and Army flags.

85. The American flag was purchased on www.americanaflagpoles.com, and the military flags were purchased on www.standflagpoles.com.

86.     None of the five flags purchased by the FTC had labels with information about their fiber content or the identity of the manufacturer or another business responsible for marketing or handling the item.

87.     The four military flags purchased by the FTC that Defendants had advertised as "American Made" (see paragraph 65) came in clear plastic packaging with stickers stating "Made in China."

88.     The American flag did not have a country-of-origin label.

## Ongoing Conduct

89.     Although Defendant Americana Liberty received the Warning Letter and Civil Investigative Demand, and Defendant Americana Liberty and the Individual Defendants engaged in multiple communications with FTC staff about the issues contained therein, Defendants have continued to market and sell products that are wholly imported and/or contain significant and essential imported parts as "Made in the USA."

90.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things, Defendants continue to make claims that their flagpole kits and flags are "Made in the USA" and fail to make statutorily required disclosures in advertising and labeling for their textile flag products.

## VIOLATIONS OF THE FTC ACT

91.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

92.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

**Count I: Section 5(a) Violation**

93.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of patriotic flag display products (*e.g.*, flagpole kits, flags, and related parts and accessories) and other patriotic-themed products (e.g., wooden flags, firepits), Defendants have represented, directly or indirectly, expressly or by implication, that their patriotic flag display products are all or virtually all made in the United States.

94.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in paragraph 93, Defendants' patriotic flag display products were not all or virtually all made in the United States because they were wholly imported or included significant imported components from another country.

95.     Whether Defendants' patriotic flag display products were made all or virtually all in the United States is material to consumers when deciding whether to purchase patriotic flag display products, such as flagpole kits and flags.

96.     Defendants' representations as set forth in paragraph 93 are false or misleading, or were not substantiated at the time the representations were made, and therefore constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF SECTION 45a**

97.     Section 45a, 15 U.S.C. § 45a, states that "To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of [Title 15, *i.e.*, 15 U.S.C. § 45]."

98.     The decisions and orders of the FTC issued pursuant to 15 U.S.C. § 45 provide that "Made in the United States" means any representation, express or implied, that a product or

service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," or "crafted" in the United States or in America, or any other U.S.-origin claim.  Further, those decisions and orders provide that in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product or service, a seller must not make any representation, expressly or by implication, that their product is Made in the United States unless:

      a.     The final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States; or

      b.     A clear and conspicuous qualification appears immediately adjacent to the representation that accurately conveys the extent to which the product contains foreign parts, ingredients or components, and/or processing; or

      c.     For a claim that a product is assembled in the United States, the product is last substantially transformed in the United States, the product's principal assembly takes place in the United States, and United States assembly operations are substantial.

99.     Recent decisions and orders including the definition in paragraph 98, *supra*, include *In the Matter of ExotoUSA LLC*, FTC Docket No. C-4800, Decision and Order at 3-4 (Jan. 10, 2024); *In the Matter of Chaucer Accessories, Inc.*, FTC Docket No. C-4797, Decision and Order at 4 (Aug. 22, 2023); *In the Matter of Cycra Inc.*, FTC Docket No. C-4794, Decision and Order at 3-4 (May 30, 2023); *In the Matter of Instant Brands LLC*, FTC Docket No. C-4788, Decision and Order at 3 (March 1, 2023); *In the Matter of Electrowarmth Products, LLC*, FTC

30

Docket No. C-4779, Decision and Order at 3-4 (Oct. 25, 2022); *In the Matter of Lions Not Sheep Apparel, LLC*, FTC Docket No. C- 4772, Decision and Order at 4 (July 28, 2022); *In the Matter of Resident Home LLC*, FTC Docket No. C-4767, Decision and Order at 3-4 (June 21, 2022); *In the Matter of Gennex Media LLC*, FTC Docket No. C-4741, Decision and Order at 4 (Apr. 9, 2021); *In the Matter of Chemence, Inc.*, FTC Docket No. C-4738, Decision and Order at 3-4 (Feb. 9, 2021); *In the Matter of Williams-Sonoma, Inc.*, FTC Docket No. C-4724, Decision and Order at 3 (July 13, 2020); *In the Matter of Sandpiper of California, Inc.*, FTC Docket No. C-4675, Decision and Order at 3 (Apr. 16, 2019); *In the Matter of Underground Sports Inc.*, FTC Docket No. C-4674, Decision and Order at 4 (Apr. 16, 2019); *In the Matter of Nectar Brand LLC*, FTC Docket No. C-4656, Decision and Order at 3 (Aug. 28, 2018); *see also FTC v. Cardiff*, 5:18-cv-02104. Dkt. 706, Final Order at 19 (C.D. Cal. Mar. 1, 2022).

## Count II: Section 45a Violations

100.    In numerous instances Defendants have introduced, delivered for introduction, sold, advertised, or offered for sale patriotic flag display products (*e.g.*, flagpole kits, flags, and related parts and accessories) with "Made in the U.S.A." or "US Made" labels, or the equivalents thereof, in order to represent that such products were in whole, virtually all, or substantial part of domestic origin.

101.    In truth and in fact, in numerous instances in which Defendants have taken the actions and made the representations set forth in paragraph 100, Defendants' patriotic flag display products were not in whole, virtually all, or substantial part of domestic origin because they included significant imported components from another country, and thus, were also not consistent with decisions and orders of the Federal Trade Commission.

102.    Therefore, Defendants' representations as set forth in paragraph 100 violate Section 45a, 15 U.S.C. § 45a.

31

## VIOLATIONS OF THE MADE IN USA LABELING RULE

103.   Effective August 13, 2021, the Made in USA Labeling Rule, 16 C.F.R. Part 323 ("MUSA Labeling Rule"), prohibits marketers from labeling products as "Made in the United States" unless: (1) "the final assembly or processing of the product occurs in the United States;" (2) "all significant processing that goes into the product occurs in the United States;" and (3) "all or virtually all ingredients or components of the product are made and sourced in the United States." 16 C.F.R. § 323.2.

104.   The MUSA Labeling Rule also provides, to the extent any mail order catalog or mail order promotional material includes a seal, mark, tag, or stamp labeling a product "Made in the United States," such label must comply with the requirements of 16 C.F.R. § 323.2. *See* 16 C.F.R. § 323.3.

105.   For purposes of the MUSA Labeling Rule, a "mail order catalog" and "mail order promotional material" are defined to include materials "disseminated in print or by electronic means, and that solicit the purchase of such product or service by mail, telephone, electronic mail, or some other method without examining the actual product purchased."  16 C.F.R. § 323.1(b).

106.   For purposes of the MUSA Labeling Rule, "Made in the United States" is defined as "any unqualified representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is 'made,' 'manufactured,' 'built,' 'produced,' 'created,' or 'crafted' in the United States or in America, or any other unqualified U.S.-origin claim." 16 C.F.R. § 323.1(a).

107.   A violation of the MUSA Labeling Rule constitutes an unfair or deceptive act or practice in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).  *See* 15 U.S.C. § 57a(d)(3) and 16 C.F.R. § 323.4.

32

**Count III: MUSA Labeling Rule Violations**

108.     Since at least March 2025, Defendants have placed seals, marks, tags, or stamps making unqualified Made in the United States claims on mail order promotional material for products that contained significant imported components.

109.     Defendants place seals, marks, tags, or stamps making unqualified Made in the United States claims in electronic media used in the direct sale or direct offering for sale of products to consumers by mail, telephone, electronic mail, or some other method without examining the actual product purchased.

110.     Defendants applied the labels described in paragraphs 108-109 to marketing material for products containing ingredients or components that were not "all or virtually all . . . made and sourced in the United States." *See* 16 C.F.R. § 323.2.

111.     Therefore, Defendants' acts or practices as alleged in paragraphs 108-110, violate the MUSA Labeling Rule, 16 C.F.R. §§ 323.2, 323.3, and constitute unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE TEXTILE ACT AND TEXTILE RULES**

112.     The Textile Act, 15 U.S.C. §§ 70-70k, governs, *inter alia*, the labeling and advertising of textile fiber products manufactured, sold, advertised, or offered for sale in commerce. *See* 15 U.S.C. § 70a.

113.     Pursuant to the Textile Act, a textile fiber product is misbranded if "a stamp, tag, label, or other means of identification, or substitute therefor authorized by section 70c of this title, is not on or affixed to the product showing in words and figures plainly legible . . . [t]he constituent fiber or combination of fibers in the textile fiber product[,] . . . [t]he name, or other identification issued and registered by the Commission, of the manufacturer of the product or [importer or another firm marketing, distributing or otherwise handling the product,] . . . [i]f it is an imported

33

textile fiber product[,] the name of the country where processed or manufactured[, or i]f it is a textile fiber product processed or manufactured in the United States, it be so identified." 15 U.S.C. § 70b(b).

114.   The Textile Act further provides that "a textile fiber product shall be considered to be falsely or deceptively advertised in any mail order catalog or mail order promotional material which is used in the direct sale or direct offering for sale of such textile fiber product, unless such textile fiber product description states in a clear and conspicuous manner that such textile fiber product is processed or manufactured in the United States of America, or imported, or both." 15 U.S.C. § 70b(i).

115.   Pursuant to Subsection 70e of the Textile Act, 15 U.S.C. § 70e(c), the Commission promulgated the Textile Rules, 16 C.F.R. Part 303. The Textile Rules provide, in relevant part:

    a.    "Flags with heading or more than 216 square inches (13.9 dm$^2$) in size" are subject to the Textile Act and Textile Rules.  16 C.F.R. § 303.45(a)(15).

    b.    Imported textile fiber products must be labeled with the name of the country where the imported product was processed or manufactured.  16 C.F.R. § 303.33(a)(1).

    c.    Textile fiber products completely made in the United States of materials that were made in the United States shall be labeled using the term "Made in U.S.A." or some other clear and equivalent term.  16 C.F.R. § 303.33(a)(2).

    d.    A textile product that is either (1) made in the United States in whole or in part of imported materials or (2) partially manufactured in a foreign country and partially manufactured in the United States must contain a label disclosing those facts.  16 C.F.R. § 303.33(a)(3) and (4).

34

      e.     Product descriptions for textile products advertised in mail order catalogs or mail order promotional materials must state clearly and conspicuously that the product was made in the United States, imported, or both in a manner that is consistent with the origin labeling of the product advertised. 16 C.F.R. § 303.34.

      f.     Labels on textile fiber products must include the generic names and percentages by weight of the constituent fibers present in the textile fiber product, the name or registered identification number of the manufacturer or one or more persons marketing or handling the textile fiber product, and the name of the country where such product was processed or manufactured, as provided in 16 C.F.R. § 303.33. 16 C.F.R. § 303.16.

116. A violation of either the Textile Act or the Textile Rules constitutes an unfair or deceptive act or practice in violation of the FTC Act. 15 U.S.C. § 70a.

117. The FTC "is authorized and directed to prevent any person from violating the provisions of [the Textile Act] in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC Act] were incorporated" therein, and any "person violating the [Textile Act] shall be subject to the penalties" provided in the FTC Act. 15 U.S.C. § 70e(b).

### Count IV: Textile Act and Rule Violations

118. As set forth in paragraph 63, Defendants market and sell textile fiber products, namely American flags, military flags, state flags, and specialty flags.

119. As set forth in paragraphs 64-65, Defendants advertise or have advertised the origin of these textile fiber products as "Made in the USA."

120.    As set forth in paragraph 66-75, these textile fiber products were wholly imported from China.

121.    As set forth in paragraphs 81-82, in some instances Defendants fail to clearly and conspicuously disclose whether their textile fiber products are imported, made in the USA, or both.

122.    As set forth above in paragraphs 86 and 88, in some instances Defendants did not include labels on their textile fiber products with information about fiber content, country-of-origin, and identity of the manufacturer or another business responsible for marketing or handling the products.

123.    Therefore, through the means described in paragraphs 118-122, Defendants have introduced, advertised, offered for sale, or sold textile fiber products that are mislabeled or falsely or deceptively advertised, in violation of Sections 70a and 70b of the Textile Act, 15 U.S.C. §§ 70a and 70b, and Sections 303.33 and 303.34 of the Textile Rules, 16 C.F.R. §§ 303.33 and 303.34.

124.    Defendants' violations of the Textile Act and Textile Rules constitute deceptive acts or practices in or affecting commerce, in violation of 5(a) of the FTC Act.  *See* 15 U.S.C. § 70a.  Therefore, the acts and practices of Defendants as alleged in paragraph 123 constitute unfair or deceptive acts or practices in violation of Section 5(a) of the Federal Trade Commission Act.

### CONSUMER INJURY

125.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, Section 45a, the MUSA Labeling Rule, the Textile Act, and the Textile Rules.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

36

**PRAYER FOR RELIEF**

Wherefore, the FTC requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act, Section 45a, the MUSA Labeling Rule, the Textile Act, and the Textile Rules;

B.     Award monetary and other relief within the Court's power to grant; and

C.     Award any additional relief as the Court determines just and proper.

Respectfully submitted,

Dated:     April 14, 2026          /s/Michelle Schaefer

Michelle Schaefer, Special Bar No. A5501956
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Phone: 202-326-3515
Email: mschaefer@ftc.gov

Adrienne Jenkins, Special Bar No. A5503483
Federal Trade Commission
1350 Euclid Ave., Suite 325,
Cleveland, OH 44115
Phone: 216-263-3411
Email: ajenkins@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

37